IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02639-MSK-MEH

DYLAN JAMES GIVEN,

    Applicant,
v.

STEVEN HARTLEY, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## RECOMMENDATION FOR DISMISSAL

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Dylan James Given's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket #5]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, this matter has been referred to this Court for recommendation. Respondents have filed their response, and Applicant has failed to submit a Reply by the extended deadline set by the Court. Dock. #17. For the reasons set forth below, the Court recommends that the Application be **denied**.

**I.    Facts**

Applicant pleaded guilty to felony theft and was sentenced to five years probation on February 10, 2000. On May 24, 2000, he pleaded guilty to trespass in a new case and a probation violation for the original case. The trial court sentenced Applicant to five years probation in both cases, to be served concurrently. Mr. Givens again violated the terms of his probation, and on February 4, 2002, the trial court sentenced him to concurrent seven-year terms of community corrections. While seeking reconsideration of these sentences, Applicant again violated the terms

of his sentence. Ultimately, on April 21, 2005, the court converted the community corrections sentences to concurrent prison sentences of the same length and later reduced the sentence to six and a half years. The court also credited Mr. Given with 373 days of presentence confinement and 273 days of residential confinement.

Applicant subsequently filed a motion for postconviction relief arguing, *inter alia*, that he is entitled to confinement credit for the 604 days he was in non-residential community corrections. The trial court denied relief. On appeal, the Colorado Court of Appeals affirmed, and the Colorado Supreme Court denied Petitioner's Writ of Certiorari. Petitioner timely filed the instant Writ of Habeas. Petitioner presents essentially one claim for relief, credit for the 604 days of non-residential community corrections, based on three grounds: (1) the trial court's failure to credit Applicant with time served in non-residential community corrections constitutes a denial of equal protection; (2) the fact that Applicant could be charged with escape as a penalty for violating the conditions of the non-residential contract requires that he receive credit for time served within such custody; and (3) based on the rulings of the Colorado Supreme Court and a significant change in the law, equal protection requires that Applicant receive credit for time served as a non-resident. Amended Application at 5A--6C.

## II. Discussion

### A. Standard of Review

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or

treaties of the United States.' The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (citations omitted). Before filing a federal habeas application, a state prisoner must first exhaust his state remedies by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Based on the denial of certiorari review by the Colorado Supreme Court in Petitioner's case, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals, which represents the final substantive proceedings in the state appellate review process.

This case is also governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA applies to all federal habeas applications filed after the AEDPA's effective date of April 24, 1996, regardless of when the state proceedings occurred. *Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999). Under AEDPA, a Petitioner is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also House v. Hatch*, No. 05-2129, ___ F.3d ___ (10th Cir. May 6, 2008).

As the Supreme Court stated:

> A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

3

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (internal citations omitted). The first inquiry is whether the clearly established federal law exists on the issue; only once this is established must the Court determine wether the state court's application of such law is objectively unreasonable. *House*, ___ F.3d ___, slip op. at 13 ("The absence of clearly established federal law is dispositive under § 2254(d)(1).").

The state court need not cite to Supreme Court cases in reaching its decision, provided that "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Accordingly, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the Petitioner as the federal standard, this Court may presume an adjudication on the merits and apply AEDPA deference. *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993), the harmless error standard of *Brecht* must be applied. *Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under *Brecht,* habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. This requires more than just an incorrect application of federal law, requiring instead a showing "somewhere between clearly erroneous and unreasonable to all reasonable jurists." *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006). Thus, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.* at 671.

Finally, factual findings made by the state trial and appellate courts are presumed correct,

with the Petitioner bearing the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003). The burden remains, because "whether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

B. **Timeliness of the Application and Exhaustion**

As acknowledged by Respondents, and reviewed by the Court, Petitioner filed his application within the one-year time limit prescribed by AEDPA. 28 U.S.C. § 2244(d). His claims, including the grounds relied upon in his application, were adequately presented to the state court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999). His claims are, therefore, exhausted, as required by 28 U.S.C. § 2254(b) and (c).

C. **Applicant's Claims**

1. **Whether the trial court's failure to credit Applicant with time served in non-residential community corrections is a denial of equal protection**

Applicant argues that similarly situated inmates can receive credit for nonresidential confinement, thereby violating his right to equal protection. When a CDOC offender is placed into a residential program, graduates to a non-residential program, and then violates the conditions of his placement, he can be sent back to CDOC and still receive credit for his time of non-residential status. On the other hand, a diversionary offender who completes a similar residential program and graduates to a non-residential program does not receive credit for his time of non-residential status, if he violates the terms and is sent to prison. Applicant argues that this difference in treatment essentially increases his sentence when similarly situated offenders receive credit.

The Colorado Court of Appeals rejected Applicant's argument as follows:

5

> Where, as here, a defendant is resentenced to the DOC upon revocation of a community corrections placement for violation of its terms, the defendant is entitled to confinement credit for any time served in a residential community corrections program, but not for any time served in a non-residential community corrections program. See People v. Hoecher, 822 P.2d 8, 12 (Colo. 1991); People v. Forester, 1 P.3d 758, 759 (Colo. App. 2000).

Response, Exh. F at 3 (emphasis in original). The Colorado Supreme Court held in *People v. Hoecher* that non-residential status is substantially similar to parole status. 822 P.2d at 14. The Court thus concluded that time served in a non-residential community corrections program should be treated similarly to time served on parole, which is not counted as confinement credit if parole is revoked, because the "parolee enjoys a degree of liberty that enables him to 'do a wide range of things open to persons who have never been convicted of any crime,' including the freedom to 'be gainfully employed and . . . to be with family and friends and to form the other enduring attachments of normal life.'" *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1971)).

Applicant's first hurdle is to establish the existence of clearly established federal law on this issue. *House*, ___ F.3d ___, slip op. at 8. This requires Applicant to identify on-point holdings from the United States Supreme Court. *Id.* (citing *Carey v. Musladin*, ___ U.S. ___ 127 S. Ct. 649 (2006). The Supreme Court has found a constitutional right to credit for presentence confinement to eliminate the possibility that an indigent who cannot post bond will serve more time than an individual who has the means to post bond. *See Williams v. Illinois*, 399 U.S. 235 (1970); *Tate v. Short*, 401 U.S. 395 (1971); *see also Johnson v. Riveland*, 855 F.2d 1477, 1483 n.7 (10th Cir. 1988) (citing "a body of law . . . which holds, under the Equal Protection Clause, that an indigent, unable to pay fines or post bail, is entitled to credit against the maximum sentence for the time spent in presentence confinement"). In doing so, the Supreme Court held that "the statutory ceiling placed on imprisonment for any substantive offense be the same for all defendants irrespective of their

6

economic status." *Williams*, 399 U.S. at 244. Here, the concern is not that an indigent person confined prior to conviction will face a longer sentence; it is that, as Applicant alleges, one who is a diversionary offender will not receive the same credits as a CDOC offender. Amended Application at 5A. To illustrate, Applicant argues that, under the new mandatory parole system, a parolee can receive confinement credit for time spent on parole even if he violates parole and is sent back to prison. *Id.* While this argument does not appear to be supported by statute, Colo. Rev. Stat. § 17-22.5-203(1) (stating that a paroled inmate returned to custody receives no credit for "the time between his release and his return to said custody"), it also has no bearing on whether an individual will receive a longer sentence due to an inability to pay, which is the genesis of the requirement that individuals receive credit for presentence confinement. Thus, no clearly established federal law exists as to Applicant's claim that non-residential status be treated the same as residential status.

In addition, it is not clear that the Supreme Court would extend its holdings to situations such as this. *Carter v. Ward*, 347 F.3d 860, 864 (10th Cir. 2003). The Supreme Court has not addressed the issue of whether non-residential status should be treated as confinement or, as the Colorado Supreme Court determined, treated as parole. Because the underlying interests at stake are not similar, this Court cannot conclude that Applicant's claim is a clear extension of Supreme Court precedent. Accordingly, the Colorado Court of Appeals' holding that Applicant is not entitled to confinement credits for time served in a non-residential status cannot be contrary to clearly established federal law.

Even if Applicant could show that the Supreme Court would extend equal protection to his claim, the Colorado Court of Appeals found no equal protection violation and relied on the *Hoecher* Court's determination that non-residential status was similar to a parolee whose freedoms were only

7

marginally limited. Such time, therefore, did not qualify as confinement. Response Exh. F at 3; *Hoecher*, 822 P.2d at 14. The Equal Protection Clause requires that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). If the similarly situated persons are not members of a suspect class, the government must demonstrate a rational basis or a legitimate state interest for the disparate treatment. *Id.* at 440. The basis for the state's reasoning in *Hoecher*, that non-residential status enjoys too many freedoms to be considered confinement, is rational and is not an unreasonable application of Equal Protection Clause jurisprudence. *Williams v. Estep*, 133 Fed. Appx. 492, 495 (10th Cir. 2005); *Firkins v. Colorado*, 434 F.2d 1232, 1234 (10th Cir. 1970).

> **2. Whether the fact that Applicant could be charged with escape as a penalty for violating the conditions of the non-residential contract requires that he be receive credit for time served within such custody**

Applicant argues that the fact that he could be charged with escape compels the conclusion that he should receive confinement credit for his time spent as a non-resident of a community corrections program. Applicant points to the level of control that the state has over a non-resident, including the right to enter and investigate his home without the need for a warrant, mandatory drug and alcohol testing, payment of supervision fees, and required meetings with a case manager. Amended Application at 6A. Notably, these conditions are similar to what paroled offenders often face. Applicant further argues that the Colorado statutory definition of "custody" supports his conclusion that non-residential status should receive confinement credits.

As an initial matter, the Court notes that this reasoning was not raised before the Colorado Court of Appeals and is, therefore, not exhausted, although Respondents have not raised this. In any event, the United States Supreme Court "has stated many times that 'federal habeas corpus relief

does not lie for errors of state law' . . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68 (citations omitted). Hence, this Court cannot review whether the Court of Appeals' determination of state law was correct. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.* at 68. As noted above, the Colorado Court of Appeals' determination was not contrary to clearly established federal law.

> **3. Whether based on the rulings of the Colorado Supreme Court and a significant change in the law, equal protection requires that Applicant receive credit for time served as a non-resident**

Applicant's third claim asserts the same grounds for relief as his first, namely, that an individual whose parole is revoked now receives confinement credit for time on parole. Applicant further argues that, because the Colorado Supreme Court has already held that non-residential status is similar to parole, he should also receive confinement credit for his time of non-residential status. First, Applicant's argument contradicts the plain language of Colo. Rev. Stat. § 17-22.5-203(1), which does not allow credit for time served on parole if parole is revoked, and Applicant cites to no authority in his habeas application to support his proposition. Second, any error by the Colorado Court of Appeals in construing state law is not cognizable as a federal habeas claim. *Estelle*, 502 U.S. at 67-68. Third, there is no clear indication that the United States Supreme Court would consider inmates incarcerated under separate statutory schemes similarly situated and further require them to receive similar confinement credit, even assuming *arguendo* that he is indeed treated differently than a parolee. Accordingly, federal habeas relief is not appropriate on this claim.

### III. Conclusion

In viewing the merits of the Petitioner's claims, he is not entitled to relief under 28 U.S.C. § 2254. Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required. Accordingly, for the reasons stated above, the Court RECOMMENDS that the Amended Application for a Writ of Habeas Pursuant to 28 U.S.C. § 2254 [Filed January 17, 2008; Docket #5] be **denied**, and that this case be dismissed with prejudice. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[1]

Dated at Denver, Colorado this 6th day of June, 2008.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[1] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).